# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **JAMES W. ROBERTSON SR.** | § | |
| | § | |
| **V.** | § | **A-18-CV-373-LY** |
| | § | |
| **INTRATEK COMPUTER, INC., ALLAN** | § | |
| **FAHAMI, AND ROGER RININGER** | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:  THE HONORABLE LEE YEAKEL
    UNITED STATES DISTRICT JUDGE

Before the Court are Defendants' Motion to Stay and Compel Arbitration (Dkt. No. 13); Plaintiff's Response (Dkt. No. 14); and Defendant's Reply (Dkt. No. 16). The District Court referred the above-motion to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B), FED. R. CIV. P. 72, and Rule 1(d) of Appendix C of the Local Court Rules.

## I. GENERAL BACKGROUND

James W. Robertson Sr. is a former employee of Intratek Computer, Inc., a California based corporation which provides information technology services to various government agencies, including the Department of Veterans' Affairs ("VA"). Robertson worked at Intratek as a SharePoint administrator/developer and InfoPath Developer/SME from July 11, 2011, until he was terminated in September of 2015. Robertson alleges that he witnessed the president and CEO of Intratek, Allan Fahami, bribe VA officials, including Defendant Roger Rininger, with lavish dinners, happy hours and trips in order to obtain lucrative contracts with the VA. Robertson further alleges that Fahami asked Robertson to violate his non-disclosure agreements with his former employers to get a competitive advantage in obtaining valuable contracts with the VA. Robertson contends that he

refused to violate such agreements and complained to Fahami that he and other employees were violating the law. Robertson alleges a week later he was fired. On October 7, 2015, Robertson informed the Office of the Inspector General for Veterans Affairs that he had been fired in retaliation for having complained about the company's illegal activities. Robertson further alleges that after he was terminated, Intratek and Fahami sabotaged Robertson's business contracts and potential business contracts.

On May 7, 2018, Robertson filed this lawsuit against Intratek, Fahami and VA employee Roger Rininger, alleging a whistleblower claim under 41 U.S.C. § 4712, tortious interference with prospective contract or business relations, and tortious interference with a contract. Defendants move pursuant to the Federal Arbitration Act ("FAA") to stay the case and compel arbitration, asserting that Robertson's claims are covered by a valid and enforceable arbitration agreement. Robertson concedes that he agreed to the arbitration policy but argues that the policy does not apply to the claims alleged in this lawsuit.

## II. STANDARD OF REVIEW

Congress enacted the FAA Act in response to widespread judicial hostility to arbitration. *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97 (2012). As relevant here, the Act provides:

> A written provision in any maritime transaction or contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA requires courts to enforce arbitration agreements according to their terms. *CompuCredit Corp.*, 565 U.S. at 98. The FAA establishes "a liberal federal policy favoring arbitration agreements." *Id.* (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*,

460 U.S. 1, 24 (1983)). "That is the case even when the claims at issue are federal statutory claims,

unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *Id.*

(quoting *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987)).

> [W]here the contract contains an arbitration clause, there is a presumption of
> arbitrability in the sense that "[a]n order to arbitrate the particular grievance should
> not be denied unless it may be said with positive assurance that the arbitration clause
> is not susceptible of an interpretation that covers the asserted dispute. Doubts should
> be resolved in favor of coverage."

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United*

*Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960)). Because of the

strong presumption in favor of arbitration, the party opposing arbitration bears the burden of proving

that the agreement is invalid or that the claims are outside the scope of the agreement. *Carter v.*

*Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

When faced with a motion to compel arbitration, courts apply a two-step inquiry. First, the

court examines whether the parties agreed to arbitrate the dispute in question. "This determination

involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties;

and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Webb*

*v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). Second, courts analyze "whether legal

constraints external to the parties' agreement foreclosed the arbitration of those claims." *Mitsubishi*

*Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628 (1985). The parties in this case

only dispute whether the claims in this lawsuit fall within the scope of the arbitration agreement.

### III. ANALYSIS

The arbitration policy contained in the Intratek Employee Handbook provides, in relevant

part, the following:

2.1    ARBITRATION

> Any controversy, dispute or claim between any employee and the Company, or its
> officers, agents or other employees related to employment, shall be settled by binding
> arbitration, at the request of either party. Arbitration shall be the exclusive method
> for resolving any dispute; provided, however, that either party may request
> provisional relief from a court of competent jurisdiction, as provided in California
> Code of Civil Procedure section 1281.8. The arbitrability of any controversy, dispute
> or claim under this Policy shall be determined by application of the substantive
> provisions of the Federal Arbitration Act (9 U.S.C. sections 1 and 2) and by
> application of the procedural provisions of the California Arbitration Act.
>
> The Claims which are to be arbitrated under this Policy include, but are not limited
> to claims for wages and other compensation, claims for breach of contract (express
> or implied), claims for violation of public policy, tort claims, and claims for
> discrimination and/or harassment (including, but not limited to, race, religious creed,
> color, national origin, ancestry, physical disability, mental disability, medical
> condition, marital status, age, pregnancy, sex or sexual orientation) to the extent
> allowed by law, and claims for violation of any federal, state, or other government
> law, statute, regulation, or ordinance, except for claims for workers' compensation
> and unemployment insurance benefits.
>
> * * *
>
> Both the Company and employees understand that by using arbitration to resolve
> disputes they are giving up any right that they may have to a judge or jury trial with
> regard to all issues concerning employment.

Dkt. No. 13-2 at 2-3.

On June 17, 2011, Robertson signed an "Acknowledgment of Receipt of Policy And

Agreement to Arbitrate Employment Disputes," acknowledging that he received a copy of the

arbitration policy contained in the Employee Handbook. The acknowledgment contained the

following language:

> I hereby agree, pursuant to the policy, to submit to binding arbitration any
> employment related controversy, dispute or claim between me and the Company, its
> officers, agents or other employees, including but not limited to claims for wages and
> other compensation, claims for breach of contract (express or implied), claims for
> violation of public policy, tort claims, and claims for discrimination and/or

harassment (…) to the extent allowed by law, and claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, except claims for workers' compensation and unemployment insurance benefits.

**I understand that by agreeing to arbitration, I am waiving the right to a trial by jury of the matters covered by the Arbitration policy.**

Dkt. No. 13-1 at 3 (bolding original).

While Robertson acknowledges that he agreed to the arbitration policy, he contends that it does not apply in this case because (1) 41 U.S.C. § 4712 prohibits arbitration of his whistleblower claim; (2) the arbitration policy does not cover tortious interference with contracts or potential contracts made by Robertson after he was terminated; and (3) the arbitration policy does not apply to former employees.

## A.    41 U.S.C. § 4712

Robertson alleges that Defendants retaliated against him by firing him after he complained about reported violations of federal law regarding government contracts in violation of the anti-retaliation provision of the National Defense Authorization Act ("NDAA"), 41 U.S.C. § 4712(a)(1).[1] Robertson argues that the statute provides him with a right to a jury trial which cannot be waived by the arbitration policy.  Specifically, Robertson relies on § 4712(c)(2) which provides that:

> [T]he complainant may bring a de novo action at law or equity against the contractor or grantee to seek compensatory damages and other relief available under this section in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy. *Such an action shall, at the request of either party to the action, be tried by the court with a jury.*

---

[1] 41 U.S.C. § 4712(a)(1) prohibits a government contractor from discriminating against an employee "as a reprisal for disclosing . . . information that the employee reasonably believes is . . . a violation of law, rule, or regulation related to a Federal contract."

41 U.S.C. § 4712(c)(2) (emphasis added). Robertson argues that this right to a jury trial in federal court cannot be waived because § 4712(c)(7) states that "[t]he rights and remedies provided for in this section may not be waived by any agreement, policy, form, or condition of employment." 41 U.S.C. § 4712(c)(7).

As noted above, federal statutory claims are arbitrable unless the FAA's mandate has been "overridden by a contrary congressional command." *CompuCredit Corp.*, 565 U.S. at 98. In other words, "[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (internal citations omitted). "If such an intention exists, it will be discoverable in the text of the [statute], its legislative history, or an "inherent conflict" between arbitration and the [statute's] underlying purposes." *Id.* "[T]he relevant inquiry [remains] whether Congress . . . precluded arbitration or other nonjudicial resolution of claims." *D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344, 360 (5th Cir. 2013) (internal quotations and citations omitted). The Supreme Court has emphasized that "[t]hroughout such an inquiry, it should be kept in mind that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Gilmer,* 500 U.S. at 26 (internal citations and quotations omitted). The party opposing arbitration bears the burden of showing whether a congressional command exists. *Id.* "Any doubts are resolved in favor of arbitration." *D.R. Horton*, 737 F.3d at 360.

Thus, "if Congress intended the substantive protection afforded [by the statute] to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history." *Mitsubishi*, 473 U.S. at 628. Courts have found that when Congress has decided to override the FAA, they have "done so with clarity" and have used explicit language

preempting arbitration. As one district court has pointed out, "when Congress restricts the use of arbitration it usually does so with 'clarity,' such as in the Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C.§ 1226(a)(2), which provides that '[n]o predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section.'" *Nelson v. Carl Black Chevrolet of Nashville, LLC*, 2017 WL 3298327, at *7 (M.D. Tenn. Aug. 2, 2017) (quoting *CompuCredit Corp.*, 565 U.S. at 103–04).

Robertson can point to no similarly clear provision in 41 U.S.C. § 4712 which unequivocally prohibits arbitration. As noted, § 4712(c)(7) merely states that the "rights and remedies provided for in this section may not be waived by any agreement . . . ." While the Court is unable to find any case law addressing whether the waiver provision in § 4712(c)(7) precludes arbitration of a claim thereunder, there is a plethora of case law addressing federal statutes containing similar waiver provisions. Thus, in *CompuCredit Corp.*, 565 U.S. at 104, the Supreme Court held that the FAA required the arbitration agreement to be enforced in a case brought under the Credit Repair Organization Act ("CROA") where the statute was silent on whether claims under the Act can proceed in an arbitrable forum. The plaintiffs had argued that the non-waiver provision in the CROA (which provided that "[a]ny waiver by any consumer of any protection provided by or any right of the consumer under this subchapter . . . shall be treated as void; and may not be enforced") precluded the case from being sent to arbitration. *Id.* at at 99. As Robertson does in this case, the plaintiffs argued that the statute's references to a "right" to bring an action in court showed that Congress intended the statute to create a right to a judicial forum. The Supreme Court disagreed, reasoning:

> These references cannot do the heavy lifting that respondents assign them. It is utterly commonplace for statutes that create civil causes of action to describe the details of those causes of action, including the relief available, in the context of a court suit. If

the mere formulation of the cause of action in this standard fashion were sufficient to establish the "contrary congressional command" overriding the FAA, valid arbitration agreements covering federal causes of action would be rare indeed. But that is not the law.

\* \* \*

Had Congress meant to prohibit these very common provisions in the CROA, it would have done so in a manner less obtuse than what respondents suggest. When it has restricted the use of arbitration in other contexts, it has done so with a clarity that far exceeds the claimed indications in the CROA. *See, e.g.,* 7 U.S.C. § 26(n)(2) (2006 ed., Supp. IV) ("No predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of \*104 a dispute arising under this section"); 15 U.S.C. § 1226(a)(2) (2006 ed.) ("Notwithstanding any other provision of law, whenever a motor vehicle franchise contract provides for the use of arbitration to resolve a controversy arising out of or relating to such contract, arbitration may be used to settle such controversy only if after such controversy arises all parties to such controversy consent in writing to use arbitration to settle such controversy"); cf. 12 U.S.C. § 5518(b) (2006 ed., Supp. IV) (granting authority to the newly created Consumer Financial Protection Bureau to regulate predispute arbitration agreements in contracts for consumer financial products or services). That Congress would have sought to achieve the same result in the CROA through combination of the nonwaiver provision with the "right to sue" phrase in the disclosure provision, and the references to "action" and "court" in the description of damages recoverable, is unlikely.

Because the CROA is silent on whether claims under the Act can proceed in an arbitrable forum, the FAA requires the arbitration agreement to be enforced according to its terms.

*Id.* at 100-01, 103-04. *See also, Gilmer*, 500 U.S. at 29 (arbitration not improper in ADEA case because Congress "did not explicitly preclude arbitration or other nonjudicial resolution of claims");

*Rodriguez-Depena v. Parts Auth., Inc.*, 877 F.3d 122, 124 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 2634 (2018); *Khazin v. TD Ameritrade Holding Corp.*, 773 F.3d 488, 493 (3rd Cir. 2014); *Saari v. Smith Barney, Harris Upham & Co.*, 968 F.2d 877, 880-81 (9th Cir.), *cert. denied*, 506 U.S. 986 (1992) (language in Employee Polygraph Protection Act that "rights and procedures provided by this chapter may not be waived by contract or otherwise" did not preclude arbitration). Thus, "statutory

references to causes of action, filings in court, or allowing suits all have been found insufficient to infer a congressional command against application of the FAA." *D.R. Horton*, 737 F.3d at 360. The legislative history of 41 U.S.C. § 4712 further demonstrates that Congress did not intend to prohibit arbitration of whistleblower claims under the statute. As the Defendants point out, that legislative history shows that during the proceedings leading to its adoption, Congress explicitly removed the very sort of language that would have precluded arbitration under the statute. Dkt. No. 16 at 3-4. Because Robertson can point to no language in the text of 41 U.S.C. § 4712 to show that Congress intended to override the FAA, he has failed to sustain his burden in this case.

Moreover, courts have found that the "right" to a jury trial or the "right" to a judicial forum are not substantive rights but, rather procedural rights which can be validly waived by an arbitration clause. Thus, in *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 265-66 (2009), the Supreme Court held that a provision in a collective-bargaining agreement that required union members to arbitrate claims under the Age Discrimination in Employment Act was enforceable as a matter of law. The Court explained: "[t]he decision to resolve ADEA claims by way of arbitration instead of litigation does not waive the statutory right to be free from workplace age discrimination; it waives only the right to seek relief from a court in the first instance." *Id.* at 265-66. In other words, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Gilmer*, 500 U.S. at 26 (quoting *Mitsubishi*, 473 U.S. at 628).

Similarly, in *McLeod v. General Mills, Inc.,* 856 F.3d 1160 (8th Cir. 2017), the plaintiffs argued that the waiver provision contained in 29 U.S.C. § 626(f)(1) of the ADEA—providing that "an individual may not waive any right or claim under this chapter"—overrode the FAA's mandate

to enforce the arbitration agreement.  Relying on *14 Penn Plaza*, the Eighth Circuit rejected this

argument finding that the "waiver" in § 626(f) "refers narrowly to waiver of substantive ADEA right

or claims—not as the former employees argue, the 'right' to a jury trial or the 'right' to proceed in

a class action." *Id.* at p. 1164-65.  The Court reasoned the following:

> The former employees say that § 626(c)(2) gives them a "right" to a jury trial on
> ADEA claims. But *14 Penn Plaza* forecloses categorizing a jury trial as a § 626(f)(1)
> "right." Since no "rights or claims" are waived by agreeing to bring claims in
> arbitration, a jury trial is not a § 626(f)(1) "right."
>
> * * *
>
> Because an individual waives no "rights or claims" under § 626(f)(1)(C) by agreeing
> to bring ADEA claims in arbitration, an individual similarly waives no "right or
> claim" under § 626(f)(1) by agreeing to bring ADEA claims in arbitration.

*Id.* at 1165.  The Court concluded that "Section 626(f) is "not a 'contrary congressional command'

overriding the FAA's mandate to enforce the agreements to arbitrate ADEA claims." *Id.* at 1166.

*See also, Williams v. Cigna Financial Advisors, Inc.*, 56 F.3d 656, 660 (5th Cir. 1995) (rejecting

argument that arbitration clause was unenforceable since ADEA provided him a right to a jury trial)

Thus, "[t]he provision of a judicial forum for resolution of disputes is not inconsistent with the

provisions of the FAA providing for an enforceable right of the parties to contractually agree to

resolve those same disputes in an arbitral forum." *Saari*, 968 F.2d at 881.

    Based upon the foregoing, the Court finds that Congress did not intend to override the FAA

in this case and, therefore, 41 U.S.C. § 4712 does not prohibit enforcement of the Arbitration policy

in this case.

**B.    Tortious Interference Claim**

    Robertson next argues that the Arbitration policy does not apply to his tortious interference

claims because those allegations only refer to Intratek's actions after he was terminated.  Robertson

argues that any actions that occurred after he was terminated from employment "are not related to employment since they occurred after employment." Dkt. No. 14 at 3.

Whether a dispute is covered by the scope of an arbitration agreement often depends on whether the language of the provisions is broad or narrow: "Broad arbitration language governs disputes 'related to' or 'connected with' a contract, and narrow arbitration language requires arbitration of disputes that directly 'arise out of' a contract." *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998). The language of the arbitration policy here is broad, as it covers "[a]ny controversy, dispute or claim between any employee and the Company, or its officers, agents or other employees *related to employment* . . . ." Dkt. No. 13-2 at 2 (emphasis added). The policy applies to all claims related to employment including "tort claims" and "claims of breach of contract (express or implied)." *Id.* Both the Supreme Court and the Fifth Circuit have categorized language similar to the language in this case as broad. *Pennzoil*, 139 F.3d at 1067 (*citing Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 397-98 (1967). The Fifth Circuit explained that when parties consent to an arbitration clause that governs all disputes "arising under" or "relating to" their agreement, they are expressing their intent that the arbitration clause reach all aspects of their relationship. *Pennzoil*, 139 F.3d at 1067. Broad arbitration clauses "are not limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Id.* (internal citation omitted). "Because broad arbitration language is capable of expansive reach, courts have held that it is only necessary that the dispute 'touch' matters covered by the contract to be arbitrable." *Id.* at 1068. When determining whether a dispute comes within the scope of an arbitration agreement, "any doubts concerning the scope of arbitrable issues should be

11

resolved in favor of arbitration." *Safer v. Nelson Fin. Group Inc.*, 422 F.3d 289, 294 (5th Cir. 2005) (internal quotation marks and citation omitted). The Fifth Circuit has thus held that "a valid agreement to arbitrate applies 'unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Personal Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002) (quoting *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990)).

Based upon the foregoing, the Court finds that Robertson's tort claims are within the scope of the broad Arbitration policy in this case. *See e.g.*, *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 609 (5th Cir. 2016) ("[T]ortious interference claims between a signatory to an arbitration agreement and agents or affiliates of the other signatory arise more from the contract than general law, and thus fall on the arbitration side of the scale."); *P&P Industries, Inc. v. Sutter Corp.*, 179 F.3d 861, 871(10th Cir. 1999) (rejecting plaintiff's argument that tortious interference with contract claim could never fall within the scope of an "arising out of or relation to" arbitration clause); *Colt Unconventional Res., LLC v. Resolute Energy Corp.*, 2013 WL 3789896, at *5 (N.D. Tex. July 19, 2013) (rejecting argument that tort claims were outside scope of arbitration agreement simply because they were intentional torts, because "whether a claim falls within the scope of an arbitration agreement depends on the factual allegations of the complaint instead of the legal causes of action asserted").

**C.    The Survival of the Arbitration Policy Post-Termination**

Robertson also argues that the arbitration policy does not apply to his tortious interference claims or his wrongful discharge claims since those allegations concern actions that occurred after he was employed and therefore the allegations do not involve a claim between "any employee and the Company." In *Litton Financial Printing Division, Litton Business Systems, Inc. v. NLRB*, the

Supreme Court recognized a "presumption in favor of post-expiration arbitration of matters unless

negated expressly or by clear implication [for] matters and disputes arising out of the relation

governed by contract." 501 U.S. 190, 204 (1991) (internal quotation marks and citation omitted).

*See also*, *Nolde Bros., Inc. v. Local No. 358*, *Bakery & Confectionery Workers Union, AFL-CIO*, 430

U.S. 243, 255 (1977). In *Nolde Bros.,*the Supreme Court held that the employees' claim for

severance pay arose under the collective bargaining contract and was subject to resolution under the

contractor's arbitration terms even though it arose after the contract was terminated, because

> even though the parties could have so provided, there is nothing in the arbitration
> clause that expressly excludes from its operation a dispute which arises under the
> contract, but which is based on events that occur after its termination. The contract's
> silence, of course, does not establish the parties' intent to resolve post-termination
> grievances by arbitration. But in the absence of some contrary indication, there are
> strong reasons to conclude that the parties did not intend their arbitration duties to
> terminate automatically with the contract. Any other holding would permit the
> employer to cut off all arbitration of severance-pay claims by terminating an existing
> contract simultaneously with closing business operations.

*Id.* at 252–53. Similarly, the Sixth Circuit has observed "that the need for an arbitration provision

to have post-expiration effect is intuitive, because if 'the duty to arbitrate automatically terminated

upon expiration of the contract, a party could avoid his contractual duty to arbitrate by simply

waiting until the day after the contract expired to bring an action regarding a dispute that arose while

the contract was in effect.'" *Huffman v. Hilltop Companies, LLC,* 747 F.3d 391, 395 (6th Cir. 2014)

(quoting *Zucker v. After Six, Inc.*, 174 F. App'x 944, 947–48 (6th Cir. 2006)).

Robertson cannot point to any provision in the arbitration policy showing that it excludes the

arbitration of claims after Robertson was terminated. *See Duge v. Sears, Roebuck and Co.*, 2016 WL

5376233 at *7 (W.D. Tex. Sept. 26, 2016) (holding that all arbitration agreement covered all

employment-related disputes, including those brought post-employment). As the Supreme Court has

reasoned, "the parties' failure to exclude from arbitrability contract disputes arising after termination, far from manifesting an intent to have arbitration obligations cease with the agreement, affords a basis for concluding that they intended to arbitrate all grievances arising out of the contractual relationship." *Nolde Bros*, 430 U.S. at 255. Because the presumptions favoring arbitrability must be negated "expressly or by clear implication," Robertson has failed to sustain his burden to show that the Arbitration policy does not cover his wrongful discharge or tortious interference claims.

## D.    Conclusion

Based upon the foregoing, the Court finds that the arbitration policy in this case is valid, binding, and enforceable. As such, the motion to compel arbitration should be granted. With regard to the disposition of the case, the Defendants request that the Court stay the case. The general rule under the FAA is in a case in which arbitration is ordered, the proceedings are stayed pending arbitration. *See* 9 U.S.C. § 3. The Fifth Circuit, however, has noted that district courts have discretion to dismiss a case in favor of arbitration when all of the issues raised before the district court are arbitrable. *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 676 (5th Cir. 1999); *see also Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration"). As discussed above, each of Plaintiff's claims is subject to arbitration. Thus, the appropriate disposition here would be to dismiss, not stay, the case.

## IV. RECOMMENDATION

The undersigned **RECOMMENDS** that the District Court **GRANT IN PART AND DENY IN PART** Defendants' Intratek Computer, Inc. and Allen Fahami's Motion to Stay and Compel Arbitration (Dkt. No. 13). The Court **RECOMMENDS** that the motion to compel arbitration be

**GRANTED** and the parties be directed to proceed to arbitration according to the terms of the arbitration policy. The Court further **RECOMMENDS** that the motion to stay be **DENIED** and that instead the case be **DISMISSED WITHOUT PREJUDICE**.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 10ᵗʰ day of December, 2018.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE