# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| JAMES W. ROBERTSON SR. and ROBERTSON TECHNOLOGIES, INC., <br> *Plaintiffs* <br><br> v. <br><br> INTRATEK COMPUTER, INC., ALLAN FAHAMI, ROGER HAYES RININGER, UNITED STATES OF AMERICA, <br> *Defendants* | § § § § § § § § § § § § | No. 1:18-CV-00373-ADA |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE ALAN D. ALBRIGHT
        UNITED STATES DISTRICT JUDGE

Before the Court is the United States' Motion for Partial Substitution, Dkt. 68, and all related briefing. This case was referred to the undersigned for report and recommendation.

### I.    BACKGROUND

The following facts are gleaned from Plaintiffs James W. Robertson, Sr., and Robertson Technologies, Inc.'s Second Amended Complaint. Dkt. 51. While Robertson was employed at Intratek Computer, Inc., he alleges he observed illegal behavior, including president and CEO of the company, Allan Fahami, bribing Department of Veterans Affairs officials. He also asserts that he witnessed Fahami unlawfully obtain and use non-public information to gain an advantage for Intratek and

1

Intratek's business partners in competing for contracts with the VA. Robertson alleges that Fahami asked Robertson to violate non-disclosure and trade secret agreements with Intratek competitors to get a competitive advantage, and when he refused to violate the law and spoke up against Fahami's behavior, Robertson was fired. On October 7, 2015, Robertson reported what he witnessed and how he was fired to the Office of the Inspector General for Veterans Affairs, who investigated his claims. On September 26, 2019, the VA OIG investigation substantiated Robertson's claims.

Robertson alleges that after firing Robertson and after his report to the VA OIG, Defendants Fahami, Intratek and VA Official Roger Rininger, tried to sabotage Robertson's livelihood and reputation, and his company, Robertson Technologies, Inc. (Robertsontek). Robertson asserts that Defendants, including Rininger, told current and potential business partners Robertson was unstable, incompetent, not to be trusted, and that contracting with Robertsontek could jeopardize those companies' business with the government. Robertson further asserts that Defendants, including Rininger, caused contracts between Robertsontek and other companies to be cancelled and Robertsontek's business relationships to sour. Plaintiffs maintain that the alleged interference with contracts and potential business relationships has cost Robertson and Robertsontek millions of dollars.

The District Court entered an Order finding that the parties were subject to an arbitration agreement and dismissed the case. On appeal, the Fifth Circuit affirmed in part and reversed in part, finding that all parties except Rininger were

subject to the arbitration agreement. Dkt. 40. The United States now moves to substitute itself for Rininger for certain claims raised in the Second Amended Complaint. Plaintiffs bring various claims against Rininger for: tortious interference with prospective business relationships; and tortious interference with existing contracts. Dkt. 51.

## II.   DISCUSSION

The United States argues that pursuant to the Westfall Act, codified at 28 U.S.C. § 2679, the United States should be substituted for Defendant Rininger with respect to the claims, or portions of claims, that concern Defendant Rininger's conduct within the VA. The United States clarifies that:

> This proposed substitution does not cover the alleged conduct occurring outside the Department of Veterans Affairs, to include the acceptance of gifts and other items of value or statements made to individuals outside the Department regarding Plaintiffs, as well as any conduct alleged to have taken place after Rininger ceased employment with the Department of Veterans Affairs.

Dkt. 68 at 2-3. The United States identifies these claims or portions of claims from the Second Amended Complaint as:

- Defendants Allan Fahami and Intratek "worked hard to wine and dine VA employees," including Defendant Rininger, to influence contracts awarded by the National Service Desk. Dkt. 51, at ¶¶ 33-40.

- As a Service Line Manager, Rininger was "important and could influence the provision of contracts because he supplied the language used in the bid contracts." *Id.* at ¶ 40.

- That as a result of Fahami and Intratek's bribery campaign, Rininger defamed Plaintiffs, misrepresented their competence, interfered with Plaintiffs' contracts and prospective contracts by influencing contract bid requirements, and caused the National

3

> Service Desk to attempt to cancel general contracts affecting Plaintiffs, the subcontractor. *Id.* at ¶¶ 58-60.

Based on these allegations, Plaintiffs assert claims against Defendant Rininger for tortious interference with existing contracts and prospective contracts and business relations. *Id.* at ¶¶ 72-95. The United States' requested certification does not cover conduct alleged in Paragraphs 42 and 60.

The Westfall Act provides that, "The Attorney General shall defend any civil action or proceeding brought in any court against any employee of the Government or his estate for any such damage or injury." 28 U.S.C.A. § 2679(c). It further provides that:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C.A. § 2679(d)(1). The Westfall Act also makes provisions for when, as here, the Attorney General does not certify that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose stating:

> [t]he employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment. Upon such certification by the court, such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C.A. § 2679(d)(3). Plaintiffs oppose this certification and substitution. Rininger also opposes the substitution, arguing it should be for all claims against him.

### A. Substitution of United States for Certified Claims

"[T]he Westfall Act accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007). "Upon the Attorney General's certification, the tort suit automatically converts to an FTCA 'action against the United States' in federal court; the Government becomes the sole party defendant; and the FTCA's requirements, exceptions, and defenses apply to the suit." *Harbury v. Hayden*, 522 F.3d 413, 416 (D.C. Cir. 2008) (quoting 28 U.S.C. § 2679(d)(1)). Certification of scope of employment under the Westfall Act is subject to judicial review, and whether a particular federal employee was or was not acting within the scope of his employment is controlled by the law of the state in which the negligent or wrongful conduct occurred. *Garcia v. United States*, 62 F.3d 126, 127 (5th Cir. 1995).

All parties, other than Rininger, assert that Texas law applies. Rininger argues that Michigan law applies as that was the place of his employment at the time of the conduct in issue. No party to this cause of action has provided the undersigned with Michigan law on the issue of "scope of employment" or any type of choice of law analysis. As the United States and Plaintiffs apply Texas law, so does the undersigned.

5

In this case, the United States seeks to certify that, at the time of the incidents giving rise to the claims outlined above, Rininger "was acting within the scope of his employment with the United States at the time of the conduct alleged to have occurred within the Department of Veteran Affairs." Dkt. 68-1. This certification is signed by Mary Kruger, Chief for the Civil Division of the Office of the United States Attorney for the Western District of Texas. *Id.* (citing Dkt. 51 ¶¶ 40, 58, 59, 73, 80-92, 85, 92-95). The Attorney General has delegated the authority to make this Westfall Act certification to, among others, "[t]he United States Attorney for the district where the civil action or proceeding is brought[.]" 28 C.F.R. § 15.4(a). Ms. Kruger therefore is a proper individual to provide the Westfall Act certification.

Plaintiffs object to the certification and substitution of the United States for Rininger as the proper defendant for any portions of Plaintiffs' claims, arguing that under Fifth Circuit and Texas law, peddling influence and advancing the interests of certain contractors in exchange for bribes was not within the scope of Rininger's employment with the VA. Dkt. 77, at 2-7 (citing *Gil Ramirez Grp., LLC v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 415-16 (5th Cir. 2015) (*GRG 1*); *Gil Ramirez Grp., LLC v. Houston Indep. Sch. Dist.*, No. 4:10-cv-04872, 2017 WL 3236110 at *6-7 (S.D. Tex. July 31, 2017) (*GRG 2*); *Gil Ramirez Grp., LLC v. Marshall*, 765 F. App'x 970, 976 (5th Cir. 2019) (*GRG 3*)). Plaintiffs also argue in a footnote that Rininger's conduct might be outside the scope of his employment as "ultra vires" acts and thus not subject to sovereign immunity. Dkt. 77 at 5 n.1.

The United States contends that the following is within the scope of Rininger's employment:

> the portions of these claims that pertain to Defendant Rininger's alleged conduct within the Department of Veterans Affairs, including contributing language used in bid contracts and internally commenting on the competence of contractors…

Dkt. 68, at 4-5. Plaintiffs argue that because some of Rininger's behavior includes allegations of improperly accepting gifts, none of his behavior qualifies as within the scope of his employment.

In *GRG 1*, the Fifth Circuit addressed whether a former elected Houston Independent School District trustee could invoke state sovereign immunity principles against state law claims of tortious interference with business relationships. The trustee, an administrator at HISD until he was elected trustee:

> masterminded questionable business arrangements in which he served as a paid consultant for several organizations that did business with the District. When the District explicitly prohibited that conduct, those companies hired Marshall's business associate Joyce Moss Clay whose company began paying Marshall a share of its consulting fees.

786 F.3d at 404-05.

In finding that the trustee was not entitled to immunity under the Texas Torts Claims Act or the Education Code, the court found that the trustee was not an HISD "employee" under the Texas Torts Claims Act. *Id.* at 416 (quoting Tex. Civ. Prac. & Rem. Code § 101.001(2)). The court found that "an elected school board trustee, was neither in HISD's paid service nor did the District have any right to control him. He is not an employee under the TTCA." *Id.*

The court then addressed the Texas Education Code provision limiting personal liability "for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee" and found that the trustee was not acting "within the scope of his duties." Tex. Educ. Code § 22.0511; *GRG 1*, 786 F.3d at 417. The court found that "bribery and peddling influence are not within the scope of a trustee's duty. He was allegedly defiling his position and wholly outside the legitimate scope of a trustee's duties if he accepted bribes in exchange for advancing the interests of certain contractors." *GRG 1*, 786 F.3d at 417. The court dismissed the trustee's "rationalization that getting involved with contracting and procurement decisions is 'minimally' within the scope of his duties, particularly when he served as HISD Board President in 2009" in light of evidence of the "pay-to-play scheme." *Id.*

Subsequent authority from the Texas Supreme Court and the Fifth Circuit Court clarifies Texas law on this issue. The Texas Supreme Court has held that the scope of employment analysis does not encompass allegations of an employee's subjective motivations; rather, the analysis looks only to whether the allegedly tortious act falls within the employee's duties. *Laverie v. Wetherbe,* 517 S.W.3d 748, 753 (Tex. 2017) ("The scope-of-employment analysis, therefore, remains fundamentally objective: Is there a connection between the employee's job duties and the alleged tortious conduct? The answer may be yes even if the employee performs negligently or is motivated by ulterior motives on personal animus so long as the conduct itself was pursuant to her job responsibilities."); *Univ. of Tex. Health Sci. Ctr.*

*at Houston v. Rios,* 542 S.W.3d 530, 535-36 (Tex. 2017) (applying *Laverie* to defamation claim and reversing trial court's denial of dismissal even though plaintiffs alleged the employee acted with bad intentions). The Fifth Circuit has also applied *Laverie* to a tortious interference claim and held that the TTCA requires dismissal when the allegedly tortious conduct occurred in connection with the defendant's job duties. *Wilkerson v. Univ. of N. Tex.,* 878 F.3d 147, 158-62 (5th Cir. 2017).

Plaintiffs assert that *Laverie* is distinguishable from this case and rely on the District Court's reasoning in *Gil Ramirez Group* on remand and after trial. *GRG 2,* 2017 WL 3236110, at *6-7. On remand, the defendant trustee argued that because the jury found his vote on the award of the subject contracts an "official act" that deemed all his behavior related to the scheme within the scope of his employment. The court rejected his argument and distinguished *Laverie*, stating:

> unlike in *Laverie*, Mr. Marshall's conduct in question is not exclusively his vote—one of the possible "official actions" found by the jury—but also his other actions in the alleged pay-to-play scheme. In contrast, the *Laverie* plaintiff based his defamation claim solely on Ms. Laverie's statements about him as a job applicant. The Texas Supreme Court held that Ms. Laverie's job duties as senior associate dean and member of university job search committee included sharing her knowledge about the plaintiff. Ms. Laverie's personal motivations for providing unfavorable information were irrelevant to the determination of whether or not she performed her duties. Her statements, even if defamatory, were made entirely as part of her role on the university's search committee. Even more importantly, Ms. Laverie was not on the receiving end of a bribe, an act that would fall beyond the scope of her duties.

*Id.*, at *6-7.

The undersigned agrees with Plaintiffs that the reasoning laid out above is not controlling of the outcome in this case. *Gil Ramirez Group* does not stand for the

9

proposition that an illegal act, such as a bribe, can *never* be within the scope of employment, and, moreover, the facts distinguish that case from this one. Unlike the defendant trustee in *Gil Ramirez Group*, the United States does not assert that Rininger is entitled to scope of employment immunity for *all* of the claims against Rininger—just those that, as in *Laverie*, are within the scope of Rininger's duties at the VA, regardless of whether he carried out those duties in an improper manner. *See, e.g.*, *McFadden v. Olesky*, 517 S.W.3d 287, 297-98 (Tex. App.—Austin 2017, pet. denied) (police officers acted within scope of employment when preparing arrest affidavit, even if information supplied was false); *Rosencrans v. Altschuler*, 161 S.W.3d 517, 521 (Tex. App.—Eastland 2004) (holding tortious act of silencing colleague by holding hand over mouth during meeting was incident to or within scope of duties as a school district employee and immunity applied). No case cited by Plaintiffs stands for the asserted proposition that if *some* claims are outside of the scope of employment (such as allegations that Rininger improperly accepted trips from contractors or defamed Robertson or Robertsontek), then *all* claims must be found to be outside the scope.

Under Texas law, the critical inquiry is whether, when viewed objectively, "a connection [exists] between the employee's job duties and the alleged tortious conduct." *Garza v. Harrison*, 574 S.W.3d 389, 401 (Tex. 2019) (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex. 1994)). "Simply stated, a governmental employee is discharging generally assigned job duties if the employee was doing his job at the time of the alleged tort." *Id.* "The employee's state of mind, motives, and

10

competency are irrelevant so long as the conduct itself was pursuant to the employee's job responsibilities." *Id.* The United States states, "the proposed substitution does not cover alleged conduct occurring outside the Department of Veterans Affairs, to include the acceptance of gifts and other items of value or statements made to individuals outside the Department regarding Plaintiffs, as well as any conduct alleged to have taken place after Rininger ceased employment with the Department of Veterans Affairs." Dkt. 68, at 3. Applying this inquiry, the undersigned finds that Rininger's actions certified by the United States are within the scope of his job duties, while those outside the scope of his employment—as they could not be in furtherance of VA business to go on vacations with contractors or to defame contractors to outside contractors—are properly carved out.

Accordingly, the undersigned finds that substitution of the United States is proper for the portion of Plaintiffs' claims against Rininger identified by the United States as within the scope of his employment. *See Bolton v. United States,* 946 F.3d 256, 262 (5th Cir. 2019) (citing *Smith v. Clinton*, 886 F.3d 122, 126 (D.C. Cir. 2018) (per curiam)) (allowing for partial substitution of the United States and stating "[e]xtensive precedent makes clear that alleging a federal employee violated policy or even laws in the course of her employment—including specific allegations of defamation or of potentially criminal activities—does not take that conduct outside the scope of employment").

Plaintiffs also argue that under the "ultra vires" doctrine, Rininger's conduct may be outside the scope of his employment. Dkt. 77, at 5 n.1. Even assuming this

11

state-law doctrine—which permits official-capacity claims for injunctive and declaratory relief to be brought against state officials who act in violation of state law, in spite of the State's sovereign immunity—is applicable in the context of a suit against a *federal* employee, the argument fails. An ultra vires claim may not be brought against a government official in his individual capacity, but "must be brought against a government officer in his or her official capacity," which is the equivalent of directly suing the employing entity. *State v. Hollins*, 620 S.W.3d 400, 405 n.20 (Tex. 2020). Additionally, money damages, requested here, are not available in an ultra vires action, only declaratory and injunctive relief. *Id.* The ultra vires doctrine is inapplicable and fails to negate the substitution of the United States for the identified portion of Plaintiffs' claims.

Accordingly, the undersigned recommends that the District Court find that Plaintiffs' First, Second, Third, and Fourth causes of action for tortious interference "shall be deemed [as] against the United States," and "the United States shall be substituted as the party defendant" for Defendant Rininger as to the portions of these claims that pertain to Defendant Rininger's alleged conduct within the Department of Veterans Affairs, as covered by the certification. 28 U.S.C. § 2679(d)(1). This would specifically include Plaintiffs' claims involving Rininger contributing language used in bid contracts and internally commenting on the competence of contractors.

### B. Rininger's Motion for Complete Substitution of the United States for All Claims Against Him

Rininger, in turn, asserts that the United States should be substituted as the defendant in his place for *all* claims brought against him in this cause of action and

that he should be terminated from this case. Dkt. 76. He argues that all Plaintiffs' claims fall within the scope of his federal employment and are subject to the substitution requirements of the Westfall Act. *Id.* at 2.

If the Attorney General refuses to certify an employee defendant under the Westfall Act, "the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment." 28 U.S.C. § 2679(d)(3). The Westfall Act's certification process and mode of judicial review when certification is refused is intended to spare federal employees from "'the burden of defending a suit ….'" *Osborn*, 549 U.S. at 239 (quoting *Mitchell v. Carlson*, 896 F.2d 128, 133 (5th Cir. 1990) (overruled on other grounds)).

The claims that the United States has identified as outside the scope of Rininger's employment are as follows:

> 42. On at least one occasion, Fahimi paid for Rininger to travel to Las Vegas for fun. On at least one other occasion, Fahimi traveled with Rininger to Chile. Based on information and belief, Fahimi paid all of Rininger's expenses for that trip to Chile.
>
> 60. Since at least May 7, 2016, Fahimi, Inatrek, and Rininger have also interfered with Robertson and Robertsontek's agreements and potential teaming agreements with Lockheed Martin, Leidos, Systems Made Simple, CSRA, ProSphere, and others by repeatedly misrepresenting and defaming Robertson, Robertsontek, and Robertsontek's abilities. Their actions actively prevent Robertsontek from being able to make contracts and business deals with these companies.

Dkt. 51.

Rininger makes various arguments as to why the United States should be substituted for all claims against him. Dkt. 76, at 6. But again, the heart of the issue

13

is whether Riniger was acting within the scope of his duties when engaging in the behavior alleged above. The undersigned finds he was not.

As the Texas Supreme Court explained:

> An employer is liable for its employee's tort only when the tortious act falls within the scope of the employee's general authority in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired. The employee's acts must be of the same general nature as the conduct authorized or incidental to the conduct authorized to be within the scope of employment. Accordingly, if an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation.

*Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007); *see also Ifone Neda Internet Serv. v. Army & Air Force Exch. Serv.*, No. 4:21-CV-330, 2022 WL 16577305, at *9 (S.D. Tex. Nov. 1, 2022) (citing same). Texas law recognizes that employees may act within the scope of their employment even when their actions are unauthorized or wrongful. *Bank of Tex., N.A. v. Glenny*, 405 S.W.3d 310, 317 (Tex. App.—Dallas 2013, no pet.). But when "an employee deviates from the performance of [their] duties for [their] own purposes, the employer is not responsible for what occurs during the deviation." *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 578 (Tex. 2002).[1]

Taking the above law into account, the undersigned finds that Rininger's acceptance of paid trips from contractors could have in no way been for the VA's benefit as Rininger's employer or in an effort to accomplish the VA's objective and

---

[1] To establish employer liability for defamation in Texas, "the defamatory statement must be (1) referable to a duty owed by the employee to the employer and (2) made while the employee is in the process of discharging that duty." *Rodriguez v. Sarabyn*, 129 F.3d 760, 769 (5th Cir. 1997).

therefore was not within the scope of his employment. He was not doing his job while on those trips. Additionally, Rininger's actions in allegedly misrepresenting and defaming Robertson and Robertsontek to other outside contractors in retaliation for Robertson's complaints against Inatrek were also outside the scope of Rininger's employment within the VA, as this activity was not alleged to be in furtherance of his actual job duties, nor was it any way carried out to benefit the VA. *See Minyard*, 80 S.W.3d at 577.

These incidents were properly outside the scope of Rininger's employment and therefore the decision not to certify them pursuant to 28 U.S.C. § 2679(d)(4) was proper.

### III.   RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **GRANT** the United States' Motion for Partial Substitution, Dkt. 68. The referral to the undersigned is **CANCELED**.

### IV.   WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review

by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED June 19, 2023.

_____
DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE